PeaRson, C. J.
 

 The first exception to the commissioner’s report is allowed. The answer sets out an
 
 a/rgumentatwe
 
 denial of the allegation of a copartnership between Isaac Wea-therly and the defendant, after September, 1850. It refers to the exhibit, marked C, as the basis of a full settlement and dissolution, and avers certain explanatory matters from which the defendant draws the inference that there was no copart-nership after the date above stated; but supposing it possible that the Court might make a different inference from the aforesaid exhibit, 0, and the other matters averred, he says, “he is advised, should the Court be of opinion that he was a partner with the testator, since 1850, still, all the profits would pass to him under the 5th clause of the will.” We think the defendant and the commissioner, fell into error in regard to the legal effect of the exhibit, C. It does not purport to be, and, is not, in fact, an
 
 entwe dissolution
 
 of the firm
 
 *51
 
 which, according to the articles of 1847, was composed ■of Isaac Weatherly, James S, Close, and Joseph Weath-erly, but is, iir its legal effect, only a
 
 partial
 
 dissolution by the withdrawal of Close from the firm — leaving Isaac and Joseph Weatherly, still in copartnership, under the original articles, which, as between them, continue in full force. The •instrument recites, “as James S, Close wishes to withdraw from, flue firm,” it is agreed that he may do so on the terms that Isaac and Joseph Weatherly, are to take all of the debts •due to the firm — are to pay all the debts due 'by it, and are to pay to Close $4124. Clearly, the only effect is, that Close withdraws, and Isaac and Joseph, are still connected as co-partners. If there was afterwards, a dissolution of the firm, which had thus become reduced to the two, it was matter of ■affirmative averment on the part of the defendant, and then as was very justly urged by Mr.
 
 Morehecid,
 
 tor the plaintiffs, the
 
 onus
 
 of proof would have been on the defendant. But, there is no distinct averment, and no proof is offered in regard to it. With respect to the question, whether, supposing the firm not to have been dissolved as between the father and son until the death of the former, the son does not become entitled to all of the profits by the fifth clause of the will, an ■opinion will not be declared until the Court is put in possession of additional facts, by another report showing the condition of the firm at the death of the testator — what slaves, if ■any, were then on hand,“-what debts, if any, were dne by third persons to the firm, standing either in the names of Isaac or Joseph Weatherly, or of Joseph alone; if they constituted a part of the effects of the firm — what, if any, debts Were by due Joseph to the firm, or by the testator to the firm— what money, if any, belonging to the firm was on hand. And as the defendant, in his answer, states, that if he is bound to •account for any portion of this amount, he is ready and willing to produce, whenever required by this Court, a full and ■detailed account of all his trading since the settlement in 1850, the commissioner "will call on him. for such accoufit, to be filed With his report, and to aid him in ascertaining the condition
 
 *52
 
 of the firm. He will, also, set out any special matter at the instance of either party, and particularly any evidence the defendant may produce in relation to the $4000, mentioned in his answer, as having been executed by him to his father, and the consideration for which it was given.
 

 The second exception is also allowed. ¥e are not certain that we apprehend the idea intended to be conveyed, when the defendant says,
 
 “
 
 he is advised, and believes that the clause •in the will, directing the said girl to be emancipated, is only in affirmance of the deed of gift.” But it is clear, that the defendant cannot set up any claim under the deed of gift in •opposition to the will; for one is not allowed to claim
 
 under,
 
 and at the same time
 
 against,
 
 a will; and from the large interest, which is given to the defendant, by the will, it is presumed he elects to take under it. There is, however, no clashing between the deed and the will, and the latter merely sets out with greater distinctness the intention of the testator with respect to the slave, Mai’garet. So, the question depends upon the construction of the will.
 

 This Court is inclined to the opinion that, in order to carry •out the policy of the law, and prevent freed negroes from remaining among us, the true principle is, not to support any -trust for emancipation, unless express provision is made that the slaves shall be sent to Liberia or somewhere else. But without resorting to that principle, we think, in this instance, the will furnishes evidence that the wish and intention of the testator was that the girl should remain in this State, and the decision may be put on the matter of fact, as in
 
 Green
 
 v. Lane, Busb. Eq. 322.
 

 If the testator had stopped after directing the girl, Margaret, to be emancipated, and giving her two hundred dollars, we should have been slow to come to the conclusion, that his intention was to tear asunder all of the past associations of her life, and to have her sent alone, at the age of twenty, and turned loose among strangers in a foreign land, with an allowance of $200. But all doubt is removed by the fact, that he revokes the devise of the Gorrell tract of land, for the pur
 
 *53
 
 pose of giving it, except 100 acres, to the girl, Margaret, and desires his executors to see that she gets the benefit of it. If she was to be sent out of the State, why give her a tract of land ? He had an abundance of cash means, and money was what she would need, provided it was intended or expected that she was to leave the State.
 

 These two eases show that the principle, referred to above, is the true one. Its adoption is the only way in which the subject can be placed on a certain footing, and the courts be relieved from the irksome task of trailing up from circumstances and inferences, more or less strong, so as to expose to view a secret trust, which is opposed to the general good, but much in accordance with the private feelings of many, who are inflamed by a mistaken notion of charity. In stating the account, the defendant must be charged with the value of this slave, which will fall into the residuary fund.
 

 We are of opinion that the devise of the G-orrell tract of land, is revoked by the codicil, executed November, 1857. As to one hundred acres of it, a different disposition is made, and if the defendant elects to take it at valuation, the value will be fixed at the time of his election, which he will be required to make within a reasonable time after the decree. As to the balance of it, the fact, that the devise to the slave, Margaret, is ineffectual, does not prevent it from having the effect of á revocation ; besides, he says, he intends to make a different disposition of it, which amounts to an express revocation, and in the concluding part of the codicil, as if anticipating that the devise to the slave would not be deemed valid, he gi ves the defendant an election to take it at valuation. This election, in this respect, is subject to the same rule as above. If he elects' not to take it at valuation, it will be sold, and the proceeds will form a part of the residuary fund.
 

 This opinion will be declared and a reference made as above directed.
 

 Pee Cdbiam, Decree accordingly.